IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SEBASTIAN SHEPHERD,        )
                              )
        Petitioner,       )
                              )
                              )   No. CIV-17-427-HE
v.                          )
                              )
JOE ALLBAUGH, Director,     )
                              )
        Respondent.     )

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions entered against him in the District Court of Cleveland County, Case No. CF-2012-1638. Respondent has responded to the Petition and filed the relevant state court records. Petitioner has replied to the Response. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

## I. Background

In a jury trial Petitioner was found guilty of committing the offenses of Murder in the First Degree (malice aforethought); Burglary in the First Degree;

1

Kidnapping of the homicide victim, Arthur Strozewski; and Kidnapping of Mr. Strozewski's minor child, Z.S.   For these convictions, Petitioner was sentenced, respectively, to life imprisonment without parole, 20 years of imprisonment, 15 years of imprisonment, and 15 years of imprisonment, with all sentences to run consecutively.   Petitioner filed a direct appeal, raising eight propositions of error.   In a lengthy decision entered August 16, 2016, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's convictions and sentences. Response, Ex. 5 (Shepherd v. State, No. F-2014-1039 (Okla. Crim. App. 2016)).   Petitioner now seeks federal habeas relief.

II. Petition

Petitioner asserts in his Petition the same eight grounds that he raised in his direct appeal.   In his first ground, Petitioner asserts that there was not sufficient evidence admitted at his trial for a jury to have found him guilty beyond a reasonable doubt as to all four convictions.   In ground two, Petitioner contends that the trial court abused its discretion by admitting certain evidence during the trial.   In ground three, Petitioner contends that prosecutorial misconduct denied him a fair trial.

In ground four, Petitioner contends that the trial court abused its discretion by failing to declare a mistrial.   In ground five, Petitioner asserts that he was denied due process because the trial judge was biased against him.   In his sixth ground,

Petitioner contends that the trial court erred by failing to instruct the jury regarding informant testimony.  In ground seven, Petitioner contends that he was denied effective assistance of counsel at his trial.  In his eighth and final ground for habeas relief, Petitioner contends that cumulative errors deprived him of a fair trial.

III. Standard of Review of Federal Constitutional Claims

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a state prisoner's constitutional claim that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).  The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on

materially indistinguishable facts. Id. at 405-406, 413.   A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

The Supreme Court has repeatedly instructed that, for a state prisoner's habeas claims adjudicated in the state courts, the AEDPA "erects a formidable barrier to federal habeas relief." Burt v. Titlow, 571 U.S. __, 134 S.Ct. 10, 16 (2013).  Under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White v. Woodall, 572 U.S. __, 134 S.Ct. 1697, 1702 (2014)(internal quotation marks and citation omitted).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(per curiam)(citations omitted).  See Cullen v. Pinholster, 563 U.S. 170, 181 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

IV. <u>Facts as Found by Oklahoma Court of Criminal Appeals</u>

Based on the state court record in Petitioner's criminal case, the OCCA made extensive factual findings in its decision affirming Petitioner's convictions and sentences.   In this Court, the OCCA's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).   Although the presumption may be rebutted with clear and convincing evidence, Petitioner has not satisfied this burden.   Consequently, in reviewing and resolving Petitioner's habeas claims the facts are those set forth in the OCCA's decision. <u>See</u> Response (Doc. # 27), Ex. 5, at 2-5.

V. <u>Sufficiency of the Evidence to Support Petitioner's Convictions</u>

In ground one, Petitioner asserts that the prosecution failed to present sufficient evidence for a jury to have found him guilty of all four offenses beyond a reasonable doubt.   In support of this claim, Petitioner appears to have adopted the argument asserted in his direct appeal.   On appeal, he argued his convictions were supported primarily by evidence concerning his behavior in custody and by admissions he made to prosecution witnesses Miller, Dijay, and Archer.   Petitioner contended that the State failed either to demonstrate that his admissions were trustworthy or to corroborate them.

A challenge to the sufficiency of the evidence presented at a criminal trial "does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). The Supreme Court has clearly established that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

To be entitled to habeas relief concerning this claim, Petitioner must demonstrate that the OCCA's decision was contrary to or unreasonably applied the controlling Jackson standard. Petitioner has not attempted to make this showing. Petitioner merely points to favorable evidence, including his own self-serving statements, without addressing the OCCA's decision at all.

In Oklahoma, a homicide is murder in the first degree when it is committed with malice aforethought. Okla. Stat. tit. 21, § 701.7(A). Burglary in the first degree in Oklahoma requires the breaking and entering of a dwelling of another in which a human is present and with the intent to commit some crime therein. Okla. Stat. tit. 21, § 1431. The offense of Kidnapping in Oklahoma is committed when a person who, without lawful authority, seizes, confines, kidnaps, abducts, or carries away another with intent to cause the other person to be confined against his or her will. Okla. Stat. tit. 21, § 741.

In its decision, the OCCA made the following factual findings in rejecting

Petitioner's claim:

> Evidence corroborated both Miller's and Dijay's accounts
> of [Petitioner's] statements.  Both women heard [Petitioner's]
> conversation with Miller the night he was arrested.  [Petitioner]
> said that [codefendant] Hawks let [codefendant] Thompson and
> him into the house to commit a robbery, that the victim was
> fighting him, and that he stabbed the victim.  When police
> arrived, the front door was ajar.  [The victim] Strozewski's
> bedroom and closet were in disarray; a nightstand was
> overturned, with its drawers pulled out, and things were pulled
> from the closet and strewn across the room as if someone were
> looking for something.  Z.S. testified that the shorter man asked
> him where his dad's money was.  Strozewski himself had
> defensive wounds, and Z.S. heard a struggle.  When he was
> arrested, [Petitioner] had recent wounds consistent with
> defensive wounds to his arms and legs, as if he'd been in a fight.
> Strozewski was stabbed 38 times.
>
> [Petitioner] told Miller that [codefendant] Hawks took him
> and [codefendant] Thompson to Strozewski's house.
> [Petitioner], calling a friend from jail, also said that
> [codefendant] Hawks was in jail because she came and got him
> and [codefendant] Thompson.  Phone records showed that
> [codefendant] Hawks called [codefendant] Thompson around
> 2:00 a.m., before the crimes, and [codefendant] Thompson called
> [Petitioner].  A car resembling [codefendant] Hawk's car entered
> Strozewski's neighborhood around 3:00 a.m., drove through at
> about 3:15 a.m., and left the neighborhood around 3:30 a.m.
> [Codefendant] Hawks made several brief calls to [Petitioner's]
> and [codefendant] Thompson's phones immediately after the
> crime, and cell phone tower records suggested she was near the
> crime scene at the time of the calls.  Video footage showed
> [codefendant] Hawk's car in Strozewski's neighborhood during
> the time many of these calls were made.
>
> In addition to the phone calls, evidence connected

[Petitioner] and [codefendant] Hawks. Strozewski's neighbor, Allen, recognized [Petitioner] as the man who, caught on his video surveillance tape a few days earlier, spoke with [codefendant] Hawks, and hugged [codefendant] Hawks' daughter. Miller's daughter, Miranda Curtis, confirmed that [Petitioner] and [codefendant] Hawks' daughter had a sexual relationship. Curtis also testified that [Petitioner] came to Miller's apartment and sat downstairs on the couch, that after he got there Dijay went into the upstairs hall, and that Dijay called police. Curtis also heard Dijay tell Miller that [Petitioner] killed the guy.

[Petitioner] said the victim's son was duct taped. Z.S. and other witnesses confirmed that the assailants tied his hands and head with duct tape. Z.S. could not identify [Petitioner]. However, he described the two men; the one who spent the most time with Z.S., taping him and looking through his closet, was shorter and had distinctive speech patterns. While [Petitioner] waited at the police station, he used distinctive words and phrasing both similar and identical to those Z.S. heard the shorter man use during the crime. Z.S. later listened to the audiotape of [Petitioner] at the police station, as well as a tape of [codefendant] Thompson; he did not recognize [codefendant] Thompson's voice but said the man on [Petitioner's] tape sounded like the man who attacked and talked to him during the crime.

[Ms.] Archer, [Petitioner's] former girlfriend, testified that she went to Miller's apartment with [Petitioner], but left when [Petitioner] went in the back door. [Petitioner] told Archer that Miller would tell them what was going on with [codefendant] Thompson. Archer said she thought [Petitioner] seemed shook up and confused. [Petitioner] also called Archer from the jail often. He said that he'd got himself into this situation. He also told Archer not to talk to the District Attorney and not to come to court. When [Petitioner] called Miller, he asked if she was going to testify against him and she told him she was not. However, he told another person, in a separate call from the jail, that Miller was the one who turned him in.

Response (Doc. # 27), Ex. 5, at 6-8.

Considering the OCCA's factual findings, which are presumed correct, and viewing the evidence in the light most favorable to the prosecution, including Petitioner's own inculpatory statements, the testimony of prosecution witnesses Z.S., Miller, Dijay, Archer, Allen, and Curtis, the evidence of his injuries at the time of his arrest, and the cell phone records showing multiple communications with codefendants Hawks and Thompson on the night of the crimes, a rational jury could easily have found that Petitioner committed each of the crimes of which he was convicted.   Petitioner has not demonstrated that the OCCA's resolution of this claim was contrary to or unreasonably applied the Jackson standard.   Petitioner is therefore not entitled to habeas relief concerning this claim.

VI. Admission of Evidence

In his second ground for habeas relief, Petitioner asserts that the trial court erred in admitting several items of evidence.   It is well established that "[f]ederal habeas review is not available to correct state law evidentiary errors . . . ." Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999).   Thus, when a habeas petitioner asserts error in the admission of evidence, judicial review is limited to the constitutional issue of whether a due process violation occurred.   In challenges to

9

the admission of evidence in a criminal trial, "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" only where the admitted evidence "is so unduly prejudicial that it renders the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 825 (1991). This "fundamental-fairness analysis is heavily dependent upon the peculiar facts of an individual trial." United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990). Thus, "inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings, including the strength of the evidence against the defendant." Hanson v. Sherrod, 797 F.3d 810, 843 (10th Cir. 2015).

In this case, the OCCA reviewed many of Petitioner's claims of error in the admission of evidence for "plain error" and found none. "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." Hancock v. Trammell, 798 F.3d 1002, 1011 (10th Cir. 2015). Consequently, when the OCCA "rejected [Petitioner's] claim[s] under the plain-error standard, the decision effectively disallowed the possibility of a due process violation." Id. This Court must defer to the OCCA's ruling unless it "unreasonably applied" the due process test.

Petitioner first argues, as he did in his direct appeal, that the trial court erred in admitting "good character" evidence of the victims and "bad character" evidence

of himself and codefendant Hawks.  Regarding Petitioner's claim that the trial court erred in allowing evidence about codefendant Hawks and Mr. Strozewski's relationship with her, the OCCA reviewed this claim for plain error and found that Petitioner had not shown how he was prejudiced by any "good character" or "bad character" evidence that related entirely to codefendant Hawks.  The OCCA further found that Petitioner had not shown he was prejudiced by the admission of evidence about Mr. Strozewski's former marriage and good relationship with his children.

Petitioner next argues, as he did in his direct appeal, that he was prejudiced by the admission of "bad character" evidence in the form of his videotaped statement made to police while he was in custody showing his tattoos and use of profane language.  Concerning this claim, the OCCA found that the videotape was relevant and admissible.  Applying the state's evidence code, the court found Petitioner's "manner of speech and language" as shown on the videotaped statement "went directly to identification," which was a "material fact at issue" in the trial. Response (Doc. # 27), Ex. 5, at 11.  The OCCA reasoned that this videotape was relevant for identification purposes because "Z.S. testified that one of the men who attacked him had a particular speech pattern and used the phrase 'bitch ass.'  He told officers that the man on this tape sounded like that man. . . . Since the tape was relevant and played for jurors, it was not error to admit it into evidence, and its admission did not

overemphasize the evidence."  Lastly, the OCCA found that "the State was free to refer" to this allegedly improperly admitted evidence during closing arguments because "there was no error in its admission. . . ." Id.  The court found Petitioner "fail[ed] to show how he was prejudiced by details of his appearance and speech that were found in otherwise admissible evidence." Id.

In this case, Petitioner's identity was a crucial issue.  Petitioner denied that he was a participant in the kidnapping, burglary, and killing of Mr. Strozewski. Because Z.S., who was a victim and also the son of Mr. Strozewski, testified that one of the offenders had a distinctive speech pattern, Petitioner's statements while in custody were highly relevant to the issue of identification.  The OCCA reasonably concluded that Petitioner's trial was not prejudiced as a result of the admission of his videotaped statement.

Petitioner next contends that the trial court erred by allowing prosecution witness Miller to testify about her telephone conversations with Petitioner while he was in jail instead of admitting taped recordings of his conversations with Miller. The OCCA rejected this claim "as a misunderstanding of the best evidence rule." Id. at 12.  The court reasoned that "Miller herself participated in the calls and was testifying regarding her own conversations, not the contents of a taped telephone call; in addition, the tapes were available to jurors during deliberations.  Any

12

question about Miller's memory of the conversations goes to the evidence's weight, not its admissibility." Id.  The OCCA reasonably concluded that Petitioner's trial was not prejudiced by the admission of Miller's testimony concerning her conversations with Petitioner while he was in jail.

Petitioner contends that the trial court erred in admitting police detective Jacobson's testimony concerning his conversation with prosecution witness Miller. As the OCCA described it, "Miller could not remember telling Jacobson several things that she had said [Petitioner] told her.  However, Miller testified that she knew she had memory problems, so she immediately repeated [Petitioner']s statements to officers to make sure they knew what [Petitioner] told her." Id. at 13.  The OCCA found that the State had "properly used this evidence to impeach Miller with a prior inconsistent statement." Id.  Further, the OCCA found that the statements constituted an "admission by a party opponent – [Petitioner's] own statements, made to Miller, which she told Jacobson," and the statements would therefore not be hearsay. Id.

No reasonable jurist could find that the state court violated Petitioner's right to due process by allowing detective Jacobson's testimony.  The testimony was proper impeachment, and it was not hearsay.  See Okla. Stat. tit. 12, §2801(B)(2)(a)(statement is not hearsay if it is offered against a party and is the party's own statement).  Given the substantial evidence of Petitioner's guilt

presented at the trial, the admission of this testimony did not "so infuse[ ] the trial with unfairness as to deny due process of law." Estelle v. McQuire, 502 U.S. 62, 75 (1991)(internal quotation omitted).

In another claim of improperly admitted evidence, Petitioner contends that the trial court erred in admitting prosecution witness Dijay's testimony because she had been held in jail as a material witness and her testimony was therefore coerced. The OCCA rejected this claim, finding that nothing in the record supported it and "in fact, examination of the extended and thorough questioning of Dijay refutes it. She clearly indicate[d] she was neither promised anything nor threatened with any consequences for her testimony, and state[d] that she would have been willing to come in and testify without being held as a material witness. She also said that her fear stemmed from threats she had received from people in the community who did not want her to testify." Id. at 14.   The OCCA reasonably concluded that witness Dijay's testimony was erroneously admitted.   Further, Petitioner has failed to demonstrate that the admission of this evidence rendered his trial fundamentally unfair in the constitutional sense.

Petitioner lastly complains that photographs of him showing his tattoos should not have been admitted into evidence.   Noting that admission of such evidence is within the trial court's discretion, the OCCA found that the photographs, "which

incidentally showed his tattoos, also showed injuries consistent with a fight.  This [evidence] independently corroborated [Petitioner's] statements that he fought with Strozewski.  In addition, defense counsel drew attention to the picture of tattoos in closing, arguing that surely Z.S. would have seen them had [Petitioner] been the man who restrained him."  Id.  Because the photographs of Petitioner were relevant to the issues before the jury, Petitioner's trial was not rendered fundamentally unfair by their admission into evidence.

In a rambling argument in the Petition, Petitioner argues that certain testimony and items of evidence were "prejudicial," but he fails to explain why the evidence prejudiced his defense.  The evidence about which Petitioner complains was relevant to material issues in the trial, including his identification, corroboration of Petitioner's statements to other individuals, and to the circumstances of the crimes. Petitioner has not demonstrated that the admission of the evidence about which he complains was grossly prejudicial.  In particular, it is difficult to see how accurate evidence depicting a defendant's tattoos or language could ever be prejudicial. Substantial evidence of Petitioner's guilt was presented at his trial, and the trial court's admission of the evidence of which Petitioner complains, some of which was not met with an objection, did not render his trial fundamentally unfair under these circumstances.  Petitioner has not demonstrated that the OCCA's decision was

15

contrary to or unreasonably applied governing Supreme Court authority, and he is not entitled to habeas relief regarding these claims.

VII. <u>Prosecutorial Misconduct</u>

Petitioner next contends that prosecutorial misconduct denied him due process and a fair trial. Petitioner points to the prosecutor's opening arguments and questioning of the prosecution witnesses that he argues was designed to impermissibly "evoke the jury's sympathy." Petition, at 10. Petitioner points to other statements by the prosecutors during his trial that he complains misstated the evidence. Petitioner alleges that the prosecutors committed unconstitutional misconduct when they called him disparaging names and thus expressed their personal beliefs about Petitioner's "bad character." Petitioner also complains about the same "good character" evidence of the victims and "bad character" evidence of his language and tattoos he previously contended was improperly admitted into evidence.

Petitioner does not allege that the prosecutors' comments directly affected a specific constitutional right. Under these circumstances, unconstitutional prosecutorial misconduct is demonstrated "only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." <u>Cummings v. Evans</u>, 161 F.3d 610, 618 (10th Cir. 1998)(citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-48

16

(1974)).  "Whether a trial is rendered fundamentally unfair due to prosecutorial misconduct requires consideration of the surrounding circumstances, including the strength of the evidence presented during the trial." <u>Malicoat v. Mullin</u>, 426 F.3d 1241, 1255 (10th Cir. 2005).

The OCCA addressed each of Petitioner's allegations of prosecutorial misconduct and rejected each one.  With regard to Petitioner's argument that the prosecutors had improperly appealed to the jurors' emotions by describing Mr. Strozewski's son and daughter as children and by presenting testimony of the children's observations of their father during the crimes, the OCCA found that the evidence was relevant because it "set the scene for the crime and helped jurors understand what occurred." Response, Ex. 5, at 15.

As to Petitioner's claim that the prosecutor misstated the evidence and argued facts not in evidence, the OCCA rejected the claim, finding that the record did not support the claim "regarding the victim's son's testimony about the assailant's height." <u>Id.</u>  The OCCA found that many of the prosecutor's comments were reasonable inferences from the evidence and that Petitioner had not shown how he was prejudiced by the comments.

The OCCA further found that Petitioner failed to show he was prejudiced by the trial court's admission of evidence consisting of testimony from Mr.

Strozewski's ex-wife about her interactions with the children immediately after the crimes and her later visit to the Strozewski's home.  The OCCA found that the record did not support Petitioner's assertion that the prosecutor misstated evidence and Petitioner had not shown how he was prejudiced by the prosecutor's comments and the testimony of prosecution witnesses.

Regarding Petitioner's contention that the prosecutor committed unconstitutional misconduct by calling him disparaging names, the OCCA found that "[p]hotographs of [Petitioner's] tattoos were properly admitted" into evidence, and the prosecutors' calling Petitioner a "thug" or "Goon Squad" was based on those actual tattoos, not on a personal belief that Petitioner was a bad person. Id. at 16. Further, defense counsel had referred to those same tattoos in closing argument, and Petitioner failed to show prejudice from these remarks.  The OCCA concluded that Petitioner had not shown prosecutorial misconduct occurred during his trial.

Given the substantial evidence of Petitioner's guilt presented at his trial, the prosecutors' comments of which Petitioner complains did not render his trial fundamentally unfair.  Petitioner has not demonstrated that the OCCA's decision unreasonably applied controlling Supreme Court precedent.

VIII. <u>Trial Court's Ruling Regarding Petitioner's Motion for Mistrial</u>

As found by the OCCA, "State's witness Allen, the victim's neighbor,

testified about a surveillance video from his house, taken a few days before the crime[s], that showed [codefendant] Hawks and her daughters near the curb. A car pulled up, and a man got out, greeted them, and hugged one of the girls. The prosecutor asked Allen to describe in general what the man looked like. Allen did, then said the man was sitting 'right there' in the courtroom. [Petitioner's defense counsel] objected to this in-court identification, stating it was not in the witness statement provided in discovery, and asked for a mistrial. The prosecutor expressed surprise at Allen's identification and asked that jurors be admonished. The trial court denied [Petitioner's] request for a mistrial, but admonished jurors to disregard Allen's last statement." Id. at 17. The OCCA found that the admonishment cured any error in Mr. Allen's initial identification testimony. Id. Further, the OCCA found that Petitioner's defense counsel then questioned Mr. Allen about the identification on cross-examination, "negating the effect of the admonishment and opening the door to further discussion." Id.

In his fourth ground for habeas relief, Petitioner contends that the trial court erred in failing to grant the defense's mistrial motion based on prosecution witness Allen's testimony. This claim is not cognizable on federal habeas review because it raises only an alleged error of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010)("'[F]ederal habeas corpus relief does not lie for errors of state

law.'")(quoting Estelle v. McQuire, 502 U.S. 62, 67 (1991)); 28 U.S.C. §2254(a)(habeas relief may be afforded to a state prisoner "only on the ground" that his or her custody violates federal law).   The OCCA relied entirely on state law in denying relief concerning this claim.   Petitioner's attempt to assert the same claim is not cognizable and should be denied on this basis.

IX. Bias of the Trial Court

Petitioner contends in ground five of the Petition that the trial judge was not "impartial" and should have "disqualified himself." Petition, at 16, 17.   Petitioner provides no authority for his claim.   The OCCA found that Petitioner had not sought recusal of the trial judge or raised an issue of bias during trial. Reviewing the claim under the OCCA's plain error standard of review, the court found that Petitioner was apparently arguing that the trial judge was biased because he had presided over the separate trials of Petitioner's codefendants and therefore had previous knowledge of the case from the earlier trials.   The OCCA rejected this claim, finding that nothing in the record supported it.   Citing, *inter alia*, the Supreme Court's decision in Liteky v. United States, 510 U.S. 540 (1994), the court found that Petitioner had failed to demonstrate either actual bias or prejudice and that his trial was fairly conducted. Response (Doc. # 27), Ex. 5, at 18.

In Liteky, the Supreme Court held that "judicial rulings alone almost never

constitute a valid basis for a bias or partiality motion," and "opinions formed by the judge on the basis of facts introduced or events occurring in the court of the current [trial] proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555.

Petitioner's complaint that the trial judge had knowledge of the facts surrounding Petitioner's offenses because he presided over Petitioner's codefendants' trials does not show bias or prejudice. The OCCA's decision was not contrary to or an unreasonable application of the principles established in Liteky. Hence, Petitioner is not entitled to habeas relief concerning this claim.

X. Jury Instructions

Petitioner contends in his sixth ground that the trial court erred by failing to *sua sponte* instruct the jurors that prosecution witness Miller was a law enforcement informant. Because Petitioner had not objected on this basis to the jury instructions given at his trial, the OCCA reviewed the issue under its plain error standard. The OCCA found no plain error occurred. The court reasoned that jurors were instructed generally on the credibility of witnesses and were instructed that Miller's testimony had to be corroborated because it contained Petitioner's admissions of guilt. Further, the OCCA found that Miller had not acted as an agent of the State and that Petitioner

admitted Miller did not receive any reciprocal advantage from the prosecution in exchange for her testimony.

"A habeas petitioner who seeks to overturn his [or her] conviction based on a claim of error in the jury instructions faces a significant burden." Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002). "Unless the Constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." Tiger v. Workman, 445 F.3d 1265, 1267 (10th Cir. 2006).

Petitioner merely conjectures, without benefit of any evidence, that witness Miller was acting as an informant for law enforcement when Petitioner went to her house and made statements to her in which he inculpated himself in the murder of the victim and the burglary and kidnapping offenses. Considering the substantial evidence of Petitioner's guilt admitted during his trial, as well as the jury instructions given at the trial regarding witness credibility and the need for corroboration of Miller's testimony, Petitioner's trial was not rendered fundamentally unfair by the trial court's failure to *sua sponte* instruct the jury on informant testimony. Petitioner is not entitled to habeas relief concerning this claim.

## XI. Assistance of Trial Counsel

In his seventh ground for habeas relief, Petitioner asserts that he was denied

effective assistance of trial counsel.  Petitioner relates all of the prior alleged claims as support for his Sixth Amendment claim.

To be entitled to habeas relief concerning his claim that he was denied effective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim involved an unreasonable application of the standard established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his or her counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687.  To show deficient performance, a defendant must show that counsel performed below the level expected of a reasonably competent attorney in criminal cases.  Id. at 687-88.  In reviewing counsel's performance, there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  Counsel's challenged conduct is "viewed as of the time of counsel's conduct," without the benefit of hindsight, and based "on the facts of the particular case." Id. at 690.

To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  A federal habeas court may grant

relief only if the petitioner can overcome the "doubly deferential" hurdle resulting from the application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190.

Applying Strickland's standard, the OCCA made extensive findings and conclusions. Regarding Petitioner's claim that his defense counsel was ineffective for failing to object to the admission of a variety of evidence and to certain arguments and comments by the prosecutor, as argued in his second and third propositions of error, the OCCA found that defense counsel was not ineffective for failing to object to this evidence or to the arguments and comments by the prosecutor because Petitioner was not prejudiced by the admission of the evidence and no prosecutorial misconduct affected his trial.

As discussed earlier, the OCCA reasonably found that the evidence challenged by Petitioner was admissible under Oklahoma law as it was relevant and its prejudicial nature did not substantially outweigh its probative value. Flowing from that reasonable decision, the OCCA reasonably held that the failure of defense counsel to assert meritless objections to the admissible evidence did not prejudice the defense.   See   Hale v. Gibson, 227 F.3d 1298, 1321-22 (10th Cir. 2000)(no prejudice when trial counsel fails to object to admissible evidence). Accord, Savage v. Bryant, 636 Fed. App'x 437, 440-41 (10th Cir. 2015)(unpublished op.); Haney v.

Addison, 275 Fed. App'x 802, 806 (10th Cir. 2008)(unpublished op.).

Likewise, as discussed earlier, the OCCA reasonably found that the prosecutors' comments of which Petitioner complains did not render his trial fundamentally unfair,   Therefore, Petitioner cannot show prejudice due to his defense counsel's failure to object to the arguments and comments of the prosecutor. The Petitioner has not demonstrated that the OCCA's decision in this respect was contrary to or an unreasonable application of the governing Strickland standard.

Regarding Petitioner's next claim that his defense counsel provided constitutionally ineffective assistance by failing to request the trial judge to recuse, the OCCA reasonably found that the trial court was not biased and that there were no grounds for recusal based on the fact that the judge had presided over Petitioner's codefendants' trials.   Hence, the OCCA reasonably found that Petitioner's trial counsel was not ineffective for failing to request the trial judge to recuse on that meritless basis.

Petitioner next asserts that his defense counsel provided ineffective assistance by failing to request a jury instruction regarding the credibility of informants.  The OCCA addressed this claim, finding that, as it previously had found, prosecution witness Miller was not an informant and that the jury was correctly instructed. Therefore, "defense counsel was not ineffective for failing to request an informant

instruction." Response, Ex. 5, at 20.   Petitioner has not demonstrated that this decision was unreasonable under the governing <u>Strickland</u> standard.

Petitioner next assert that his defense counsel provided ineffective assistance by failing to impeach prosecution witness Miller with "readily available" evidence relevant to her truthfulness. <u>Id.</u>   In asserting this claim in his direct appeal, Petitioner admitted Miller had not been convicted of a crime.   As the OCCA described Petitioner's argument, Petitioner "admit[ted] that Miller had not been convicted of a crime, but argue[d] that, during his trial, she was being prosecuted for second-degree burglary in Oklahoma County." <u>Id.</u>   The OCCA found that nothing in the record supported this assertion.   Hence, the OCCA concluded that Petitioner had not demonstrated ineffective assistance of counsel under <u>Strickland</u>.

In connection with this finding, the OCCA addressed Petitioner's request for an evidentiary hearing under the court's procedural rule.   The OCCA found that Petitioner had not satisfied the rule's requirements that he show by clear and convincing evidence that the witness could have been impeached with the new evidence or that there was a strong possibility his defense counsel was ineffective for failing to discover the new evidence.   Based on these findings, the OCCA denied the motion.

In this Court, Petitioner again attempts to argue that his defense counsel

should have discovered that the witness was being prosecuted in a different court under a different name and impeached the witness's credibility with this "evidence." But, as the OCCA found, the state court record contains no such evidence.

Defense "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Dever v. Kan. State Penitentiary, 35 F.3d 1531, 1537 (10th Cir 1994)(citing Strickland, 466 U.S. at 690). Moreover, "counsel's decision regarding how best to cross-examine witnesses presumptively arise from sound trial strategy." Delozier v. Simmons, 531 F.3d 1306, 1326 (10th Cir. 2008). Even assuming the truth of Petitioner's assertion that prosecution witness Miller was being prosecuted under a different name and in a different court, it is mere speculation that defense counsel could somehow have obtained this information at the time of Petitioner's trial. And even if counsel had cross-examined witness Miller with this information, Petitioner has failed to demonstrate a reasonably probability that the result of his trial would have been different. Hence, the OCCA reasonably concluded that Petitioner's defense counsel did not provide professionally unreasonable assistance at the time of his trial.

## XII. Cumulative Errors

Cumulative error warranting habeas relief is present when the "cumulative

27

effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003)(internal quotation marks and citation omitted). Thus, "[a] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Id. (internal quotation marks and citation omitted).

In Petitioner's appeal, the OCCA concluded that, since it had not found any error in Petitioner's previous propositions, there was "none to accumulate." Consequently, the court denied Petitioner's last claim of a due process deprivation due to cumulative errors. Petitioner has not demonstrated that this conclusion was contrary to or unreasonable under governing Supreme Court precedent. Petitioner is therefore not entitled to federal habeas relief.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Second Supplemental Report and

Recommendation with the Clerk of this Court by _____November 14th__, 2017, in

accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object

to this Second Supplemental Report and Recommendation would waive appellate

review of the recommended ruling.  <u>Moore v. United States of America</u>, 950 F.2d

656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir.

1996)("Issues raised for the first time in objections to the magistrate judge's

recommendations are deemed waived.").

This Second Supplemental Report and Recommendation disposes of all issues

referred to the undersigned Magistrate Judge in the captioned matter, and any

pending motion not specifically addressed herein is denied.

ENTERED this ___25th___ day of ____October____, 2017.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE